**Sharol J. CULVERSON,**
**Petitioner–Appellee,**

v.

**Dawn DAVISON, Warden, Respondent–**
**Appellant.**

**No. 06–56827.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 2007.

Filed June 8, 2007.

Steven S. Lubliner, Esq., Law Offices of Steven S. Lubliner, Petaluma, CA, for Petitioner–Appellee.

J. Conrad Schroeder, Office of the California Attorney General, Los Angeles, CA, for Respondent–Appellant.

Before: KLEINFELD and PAEZ, Circuit Judges, and HART *, Senior Judge.

MEMORANDUM **

 We assume without deciding that the denial of parole must be supported by "some evidence."[1] Under California law, which is the source of the petitioner's "liberty interest,"[2] the nature of the commitment offense alone can suffice as "some evidence" justifying a denial of parole.[3] There is no "clearly established federal law, as determined by the Supreme Court of the United States,"[4] that limits the number of times a parole board may deny parole to a murderer based on the brutality and viciousness of the commitment offense.[5]

REVERSED.

PAEZ, Circuit Judge, dissenting.

California Penal Code section 3401 creates a constitutionally protected liberty interest in a parole release date, *Sass v. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir.2006), the denial of which must be supported by "some evidence," *see id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)); *In re Powell*, 45 Cal.3d 894, 904, 248 Cal.Rptr. 431, 755 P.2d 881 (Cal.1988) (same (citing *Hill*)). The record here shows that the state court's conclusion that "some evidence" supported the denial of a parole release date to Culverson "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Because I would therefore affirm the district

---

* The Honorable William Hart, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. *Superintendent v. Hill*, 472 U.S. 445, 456–57, 105 S.Ct. 2768 (1985); *see also Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir.1987).

2. *See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Board of Pardons v. Allen*, 482 U.S. 369, 377–78, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *see also McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir.2002).

3. *See* Cal. Pen.Code § 3041(b); 15 C.C.R. §§ 2400–02; *see also In re Dannenberg*, 34 Cal.4th 1061, 1094–96, 23 Cal.Rptr.3d 417, 104 P.3d 783 (2005); *In re Rosenkrantz*, 29 Cal.4th 616, 682–83, 128 Cal.Rptr.2d 104, 59 P.3d 174 (2002).

4. 28 U.S.C. § 2254(d).

5. The *dicta* in Ninth Circuit cases like *Biggs v. Terhune*, 334 F.3d 910, 916–17 (9th Cir.2003), are not holdings of the Supreme Court, as required by *Carey v. Musladin*, 549 U.S. ——, 127 S.Ct. 649, 654–57, 166 L.Ed.2d 482 (2006), and *Schriro v. Landrigan*, —— U.S. ——, 127 S.Ct. 1933, 1941–43, 167 L.Ed.2d 836 (2007).

court's grant of a writ of habeas corpus, I respectfully dissent.

Sharol Culverson pled guilty to second degree murder in 1979. Three days after her partner Barbara Chase moved out of the apartment they had shared as a couple for seven years, Culverson saw Chase and a woman with whom Chase was then romantically involved at a gas station. As they left the gas station, Culverson, who regularly carried a gun in her car for security purposes,[6] followed them. When they stopped at a red light, Culverson walked up to their car and shot both women. She then turned herself in to the police. She was sentenced to two concurrent sentences of seventeen years to life. She had no prior criminal record.

Culverson's twenty-eight-year prison record is beyond exemplary. As the Report and Recommendation adopted by the district court found:

> [Culverson] has earned A.A. and B.S. degrees.... She has completed numerous therapy and self-help programs, including being a co-facilitator in Anger Management classes.... Her peers elected her to the Women's Advisory Council, and the records reflect documentation and appreciation of her dedicated services. [She] has obtained many vocational certificates, and continues to receive commendations from her supervisors.

In addition to Culverson's "excellent work history," a recent psychological evaluation concluded that Culverson has developed anger management and self-improvement skills "to a greater extent than the average inmate," and has "realistic parole plans, including family and community support, employment, family financial support, and a residence." The only tarnish in Culverson's almost three-decade prison record is having once received counseling for having an excess of one sheet, one sweatshirt, and one laundry bag in her room.

Pursuant to title 15, section 2402(a) of the California Administrative Code, the Board of Parole Hearings ("Board") must "determine whether the life prisoner is suitable for release on parole." "A determination of unsuitability is simply shorthand for a finding that a prisoner currently would pose an unreasonable risk of danger if released at this time." *In re Smith,* 7 Cal.Rptr.3d 655, 114 Cal.App.4th 343, 370 (2003) (citing § 2402(a)). The circumstances of the commitment offense are probative of unsuitability when "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." § 2402(c)(1). However, "[a] conviction for murder does not automatically render one unsuitable for parole." *Smith,* 7 Cal. Rptr.3d 655, 114 Cal.App.4th at 366; *see also In re Scott,* 15 Cal.Rptr.3d 32, 119 Cal.App.4th 871, 891 (2004) ("[A] conviction for second degree murder does not automatically render one suitable" for parole.). Instead, "the gravity of an offense tends to show unsuitability where the circumstances of the crime distinguish it as especially grave." *Smith,* 7 Cal.Rptr.3d 655, 114 Cal.App.4th at 366; *see also In re Rosenkrantz,* 29 Cal.4th 616, 683, 128 Cal. Rptr.2d 104, 59 P.3d 174 (Cal.2002) ("A life term offense ... must be *particularly egregious* to justify the denial of a parole date.").

The Board found Culverson unsuitable for parole based on its finding that "the commitment offense was very serious .... [and] was carried out in an especially violent and brutal manner .... in a manner that demonstrates a disregard for human life in the murder of the victims." The

---

**6.** Culverson testified at her parole hearing that as a house painter she often worked late at night or early in the morning in vacant houses.

Superior Court denied Culverson's habeas petition, agreeing with the Board that the circumstances of Culverson's 1979 offense established her present unsuitability for parole. This conclusion has no support in the record and therefore is not entitled to our deference under 28 U.S.C. § 2254(d)(2). *See Wiggins v. Smith,* 539 U.S. 510, 528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (concluding that the state court based its decision on an unreasonable determination of the facts when "the records contain no mention" of facts upon which state court relied in denying claim); *Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.2004) (explaining that a collateral challenge to a state court's factual finding "may be based on the claim that the finding is unsupported by sufficient evidence").

First, the record provides no evidence whatsoever that Culverson's crime was, in the state court's words, "especially violent and brutal;" "a type of 'execution' killing," or "a premeditated killing." The circumstances of the commitment offense indicate unsuitability when there is evidence that "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Cal. Admin. Code title 15, § 2402(c)(1). Beyond the offense's involving multiple victims, *see* subclause (A), none of the other factors in subclauses (B)–(E) is present. The fact that an offense involved multiple victims "does not make the murder ... so expressively violent or vicious that it suggests [the prisoner] remains a public safety threat." *In re Weider,* 52 Cal.Rptr.3d 147, 145 Cal. App.4th 570, 589 (2006).

Second, the facts of this 1979 offense prove nothing about Culverson's present suitability for parole. Culverson has achieved significant self-improvement, has taken on a leadership role amongst other women prisoners, has maintained a blemishless prison record, received a psycho-logical assessment of complete rehabilitation, and has a supportive family and ready employment—for which she is qualified—to aid her transition back into mainstream society. The fact that she shot two people during a moment of intense emotional distress in 1979 is simply not probative of her present suitability for release. *See Scott,* 133 Cal.App.4th at 595, 34 Cal. Rptr.3d 905 ("The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison.... [T]he predictive value of the commitment offense may be very questionable after a long period of time."); *see also Rosenkrantz v. Marshall,* 444 F.Supp.2d 1063, 1086–87 (C.D.Cal.2006) (holding that commitment offense did not constitute "reliable evidence [for] the BPT's conclusion that petitioner is unsuitable for parole" (citing *Hill,* 472 U.S. at 455, 105 S.Ct. 2768)).

In short, this record provides no evidence that Culverson is not suitable for immediate release. In concluding to the contrary the state court relied on an unreasonable determination of the facts surrounding Culverson's offense and present position. Because we owe such a conclusion no deference under § 2254(d)(2), I would therefore affirm the district court's judgment.